SARAH J. S. HOLDEN *v*. SHREWSBURY SCHOOL DISTRICT No. 10,

*Evidence. Prudential Committee. Teacher. Contract. School.*

Where in an action by a teacher of a district school, (who had been discharged), for damages in being prevented from performing the contract to teach the school, the defendant district gave notice that they would give in evidence that the plaintiff was incompetent to govern the school. it was held competent for the district to prove certain particular instances of mismanagement in the government of the school; that the evidence need not be confined to the general management and government, and its effect upon the school, even though the notice was general.

A prudential committee of a school district has full authority and power, as matter of law, to dismiss a teacher, but it should be for just cause, or the contract will continue operative and binding upon the district.

The facts in this case show an absolute dismissal of the teacher.

A contract to teach a district school is to be considered as any ordinary contract for service and work, not determinable upon considerations of public policy.

Incompetency to teach all or any of the subjects of instruction or learning prescribed by law to be taught in the common schools of the state, or to properly rule and govern the school, is a good and sufficient cause for the teacher's dismissal. But mistakes in occasional instances—one, two, or three, or even more— would not necessarily show the teacher incompetent to teach that subject or branch of instruction in which the mistakes were made,

ASSUMPSIT for services by the plaintiff as teacher of the district school in the defendant district in the winter of 1863–'64. The plaintiff's declaration contained the common counts in *indebitatus assumpsit* for work and labor, and also for money, and also a special count on the contract for teaching the school. Plea, the general issue, with notice of a tender and other special matters in defence. The notice contained the following clause : " and that the said plaintiff was incompetent to manage the said school,—that she was unreasonable in her requirements of the scholars in said school, and

Holden v. School District.

was uneven in her treatment of them, and partial and abusive in her treatment and discipline of certain ones of the scholars in said school; and that she failed in all respects as a teacher of said school." Trial by jury at the March Term, 1865, KELLOGG, J. presiding.

The plaintiff introduced a certificate of her qualifications as a teacher, in respect to which no question was made.

It appeared that in October, 1863, the plaintiff made a contract with Amherst W. Aldrich, the prudential committee of the defendant district, by the terms of which she was to teach the winter district school in that district for fourteen weeks commencing on Monday, the 23d of November, 1863, and was to be paid therefor, by the said district, four dollars and fifty cents per week, and was to be boarded by those who should send scholars to the school; that she commenced the school at the time appointed, and taught it four weeks and until the noon of Friday in the fifth week; that on Monday in the said fifth week, and also on the Friday previous to that Monday, she had some difficulty with one of the larger scholars in the school, which resulted in her expelling several scholars; that on Tuesday, she sent for Aldrich, the prudential committee, to come to the school house, and he did so, and had a conversation with her, in which he advised her to quit the school under the circumstances, and that Aldrich repeated the same advice to her at the school house on the next day, (Wednesday), on which day there were only fifteen scholars in attendance at the school; that she declined giving up the school on both of these occasions; that on the next day (Thursday,) Aldrich again went to the school house, and talked with her about leaving the school, when she again declined leaving; that thereupon, in the same interview, Aldrich told her that he dismissed or discharged her from the school, if he had the right or the power so to do,—that some said he had and some said he had not,—and that if he had the right to dismiss her, he should not pay her for her services if she continued on with the school; that she replied to him that she should not leave the school until she was proved to be incompetent to teach it and her certificate was revoked, and that he had no authority to dismiss her, and that she should stay as long as she had one scholar in school; that Aldrich then told her that he had no more to say; that on this day (Thursday,) there were only six or seven scholars

in school ; that Aldrich, after this interview with the plaintiff, and in the afternoon of the same day, went to Mr. Eastman, the superintendent of common schools in the town, and requested him to go the next morning to the school and have a public examination of the plaintiff's qualifications as a teacher, as she would not leave the school unless she was examined and her certificate was revoked ; that to this application Eastman replied that he would go to the school and see her, and try to arrange or reconcile the matter ; that in the forenoon of the next day (Friday) Eastman visited the school and talked with the plaintiff, and made a partial examination of the plaintiff's qualifications as a teacher, and of the school ; and that, at the close of the school at noon on that day, the plaintiff told the scholars present that there would be a recess or vacation from that time until a week from the then next following Monday morning, and then left the school.

The said Aldrich testified, when examined as a witness for the defendants, that he gave to the plaintiff no leave to take this recess or vacation, and had no knowledge of it until after it was taken, and that he was first informed that the plaintiff had taken a vacation on Saturday, the day after she dismissed the school.

It appeared that on the morning or forenoon of Monday, the day when this recess or vacation expired, the plaintiff went to the said Aldrich, and asked him if he was willing to countermand his orders and let her go into the school again. The plaintiff's testimony tended to show that, to this inquiry, Aldrich replied that he was not willing, and that she then asked him if he considered her turned out of the school, and he replied that he did if he had the power to do it, and that she would receive her pay just as soon by staying out of, as by going into the school. Aldrich testified on this point that the plaintiff inquired, on the occasion of this interview, if he would accept of her services to go into the school, and that he told her that the school house was open and warmed, and that the scholars were there ; that she then wanted to know if he would fulfill the contract, and where she should go to board, and he told her to call upon him when he failed to fulfill the contract ; that if she went into the school the district could not get rid of paying her for as long as she stayed there ; that she asked him if he had hired another teacher ;

that he told her that he had written to a man to know if he would go into the school, but had not then hired any other teacher; and that when the plaintiff left him that morning, she told him that she was ready to go into the school again at any time when he would come after her.

It was conceded that Aldrich acted in good faith in making inquiries in respect to the competency of the plaintiff as a teacher, and in what he did in respect to dismissing or removing her from the school.

The defendants also claimed that the plaintiff was incompetent to govern and manage the school, and that she failed in proper discipline in the school, in consequence of which the school became worthless and was broken up; and upon this point, the defendants proposed to show by the testimony of Edgar Aldrich, one of the scholars who attended the school, (who was called and testified as a witness on the part of the defendants,) " certain particular instances of mismanagement in the government of the school by the plaintiff while she was teaching it." This testimony was objected to by the plaintiff and excluded by the court,—the court ruling that the testimony must be confined to her general management, government and discipline, and its effect upon the school, and that inquiries in respect to particular instances of alleged mismanagement or misgovernment by the plaintiff in the school were inadmissible. To this decision and ruling the defendants excepted.

The plaintiff's testimony tended to show that when Aldrich told her on Thursday of the fifth week of the school that he dismissed or removed her from the school if he had the power or authority to do so, he claimed that he had such power and authority. There was no evidence in the case tending to show that Aldrich ever complained, or expressed any dissatisfaction, to the plaintiff on account of her having taken the said recess or vacation above mentioned. It appeared that, on the Monday morning when the said recess or vacation expired, the school house in which the said school was kept, was, by the direction of Aldrich, opened, and a fire was made to warm the same.

The testimony on the part of the plaintiff tended to show that she was qualified to teach and properly govern the school, and that she did properly govern the school while she was its teacher.

The claim made by the plaintiff on the trial was for damages in being prevented from performing the contract, she having been paid for the time she taught.

The counsel for the defendants requested the court to charge the jury :

I. That the duty of prudential committees to remove teachers, is to be determined in part, at least, upon considerations of public policy, and not wholly upon strict right, as in the case of ordinary contracts ; that the public good furnishes the rule of " duty " by which the prudential committee is to be governed in the removal of teachers ; that he must necessarily act *quasi* judicially in performing such duty, and that the contract in this case must be held to have been entered into in view of this " duty " imposed upon the prudential committee, so as to constitute one of its elements or conditions.

II. That under the evidence in the case the plaintiff is not shown to have been removed from the school, or prevented in any way from performing her contract, and therefore is not entitled to recover.

III. That if the jury find that on Friday of the fifth week of the term, without the knowledge or consent of the prudential committee, the plaintiff announced and took a vacation from that day until the next Monday week, it would constitute such a breach of the contract on her ·part, as would discharge the defendants from any obligation to continue the plaintiff in their employ after the expiration of such vacation.

The court declined to instruct the jury agreeably to either of the requests above mentioned." The court instructed the jury that the prudential committee of the defendant school district had full authority and power, as matter of law, to remove and dismiss the plaintiff as the teacher of the school whenever he chose to exercise that authority·and power, but that this power might have been exercised with respect to the plaintiff, either rightfully or wrongfully, and that whether it was rightfully or wrongfuly exercised in this case, would depend upon the fact whether there was or was not a just and sufficient cause· for its exercise ; that if the plaintiff was rightfully dismissed or removed from the school, she could not recover in this

action, but that if she was dismissed or removed from the school without any just and sufficient cause, she was thereby discharged from her duty to perform the contract on her part, and the contract would in that case continue operative and binding upon the district, and she would be entitled to recover in this action; that if Aldrich told the plaintiff that he dismissed or removed her from the school if he had the right or power so to do, this was equivalent to, and was in fact a complete and absolute dismissal and removal of the plaintiff from the school, and that she would be justified in treating it as such; that the plaintiff's act in denying the authority of Aldrich as the prudential committee of the district to remove her from the school, and in continuing to teach the school, after her dismissal from the school on Thursday of the fifth week of the school and until the time of taking the said recess or vacation at noon on the following day, (Friday,) did not alter or qualify the fact or legal effect of her dismissal or removal from the school which had been previously made; that if the jury should find the conversation between the plaintiff and Aldrich on Monday, the day the vacation expired, to have been as the defendants' evidence tended to prove, then the plaintiff should have resumed the school; but if the jury should find, as the plaintiff's evidence tended to prove, she was justified in not going back into the school.

The court further instructed the jury that the plaintiff's contract to teach the school in this case was to be considered as an ordinary contract for service and work, and that there was nothing in its nature, or in the law governing it, which would distinguish it in respect to its construction or its incidents from any other contract. The court also instructed the jury fully as to the obligations of a teacher under a contract to teach a district school, and stated in substance that incompetency to teach all or any of the subjects of instruction or learning as prescribed by law to be taught in the common schools of the state, or to properly rule and govern the school, is good and sufficient cause for the teacher's dismissal. But mistakes in occasional instances,—in one, two, or three, or even more—would not necessarily show the teacher incompetent to teach the subject or branch of instruction in which the mistakes were made; that the proper inquiry would be

whether the teacher was competent to teach that subject or branch of instruction in a common district school, such a one as she was engaged in teaching. The court also instructed the jury that as the plaintiff was dismissed by Aldrich the prudential committee, on Thursday of the fifth week of her school, her subsequent acts in respect to the recess or vacation which was taken on the next day, would be immaterial, inasmuch as the fact or legal effect of the previous dismissal or removal from the school on Thursday, could not be affected or qualified by her act in taking that recess on the next following day.

To the refusal of the court to charge the jury agreeably to the defendants' requests, and to the charge as made, the defendants excepted. The jury returned a verdict in favor of the plaintiff for $43.69 damages.

*Proctor & Veazey* and *Dewey & Joyce*, for the defendants.

I. Aldrich did not discharge the plaintiff on Thursday of the 5th week. *a.* His language did not amount to a discharge or dismissal in legal effect. *b.* He did not so intend, judged by his acts at the time and subsequently. *c.* She did not consider herself discharged at the time.

II. If his language did amount to a discharge the plaintiff could not be allowed to carry it along day after day and week after week even, and leave at any time on the strength of it, especially when she knew from his conduct that he did not regard her as discharged.

III. But if this be allowable, she did not act upon it until a week from the following Monday, and having taken a vacation in the mean time without the knowledge or consent of the prudential committee, she forfeited her right to return. *Clark* v. *School District*, 29 Vt. 217. Aldrich never subsequently assented to her taking a recess. The fact that he never complained on account of it is no assent. Upon the theory of *Mason* v. *School District*, 20 Vt. 487. Aldrich must have given his unqualified consent to her return when satisfied that she left for sufficient cause, to have constituted such assent. But if he did assent it was her fault that she did not go on with the school. If he did not, he had the legal right to refuse.

IV. If it be held that under the circumstances the plaintiff was authorized in taking a recess, then we claim that she was not discharged on Monday after nor in any manner prevented from performing her contract. *a.* The plaintiff had no right to exact from Aldrich a promise that he would accept her services as a condition to her going on with the school. It was her duty to go on with it until prevented. *b.* It is always the right of the hirer to express dissatisfaction. If he stands by without any expression of disapproval he cannot afterwards object that the work was not done according to the contract.

V. The court should have admitted the testimony offered by the defendants for the purpose of showing certain particular instances of mismanagement of the school by the plaintiff. *Paul* v. *School District,* 28 Vt. 575.

*E. Edgerton,* for the plaintiff.

I. The instructions asked for by the defendants, are based upon an assumed distinction between the contract sued on, and ordinary contracts for hire of services. No such distinction exists. *Mason* v. *School District No.* 14, 20 Vt. 487 ; *Paul* v. *School District No.* 2, 28 Vt. 575.

II. The manner in which the prudential committee signified his will to the plaintiff that she should leave the school, is none the less effectual because of the hypothetical form of the expression used. He had the power of removal—he intended to use it—and both parties clearly understood, and acted on the understanding, that to the extent to which the power was vested in him the removal was complete, and that it took effect *in presenti.*

IV. There was no cause for removal. The court was correct in holding that " the testimony must be confined to her general management, government and discipline, and its effect upon the school, and that inquiries in respect to particular instances of alleged mismanagement, or misgovernment by the plaintiff in the school were inadmissible. 1st. If evidence of this kind is ever competent it was clearly inadmissible under the notice, in this case. The *notice* is defective in that it is too general. 2d. The evidence was properly excluded " *ab inconvenienti.*" 3d. The evidence is incompetent to

Holden *v.* School District.

prove the fact sought to be established by it, to wit: a want of sufficient administrative capacity on the part of the plaintiff or a failure to exercise it.

The opinion of the court was delivered by

WILSON, J. The questions presented in this case relate to the rejection of testimony offered by the defendant as to the competency of the plaintiff to govern the school, and to the charge of the court upon various points in the case. It was claimed by the defendants on trial in the county court that the plaintiff was incompetent to govern and manage the school, and upon this point the defendant proposed to prove, by the testimony of Edgar Aldrich, one of the scholars who attended the school, certain particular instances of mismanagement in the government of the school by the plaintiff while she was teaching it. This testimony was objected to by the plaintiff and excluded by the court, the court ruling that the testimony must be confined to her general management, government and discipline, and its effect upon the school, and that inquiries in respect to particular instances of alleged mismanagement or misgovernment by the plaintiff in the school, were not admissible.

It is urged by the plaintiff's counsel that the testimony was properly excluded by the county court, on the ground that the notice alleged the facts proposed to be proved in general terms, and contained no specification of mismanagement or misgovernment of the school by the plaintiff. There is some force in the argument that under so general a notice of the grounds of defence it could not have been expected that the plaintiff would be prepared to meet and rebut testimony of particular instances of incompetency in her government. It is doubtless true that, upon the point proposed to be proved by the defendants, testimony, to some extent, of the general management of the school by the plaintiff was admissible. But it is a general rule of evidence that in cases where a witness would be allowed to express his opinion upon the subject to which his testimony relates, he must first disclose the facts on which his opinion is founded. The defendants offered to show how the plaintiff, in certain instances, managed and governed the school, that in certain instances she mismanaged and misgoverned it, and we think the testimony was ad-

35

missible. The alleged mismanagement or misgovernment of the school, in the particular instance referred to, must have consisted in some act or neglect committed or suffered by the plaintiff, and whether the act or neglect of which the defendants complained, was mismanagement or misgovernment of the school, could be determined only from testimony of the act or neglect, and the circumstances under which it was done or suffered. The act or neglect might have been wholly indifferent in its effect upon the school, or it might have furnished a ground of defence to the action. It is evident that the jury could not decide in respect to the nature and effect of the alleged act or neglect until they had heard the testimony. The notice of this ground of defence was sufficient to put in issue the manner in which she managed and governed the school, and such inquiry would involve particular instances of her management and government. The question whether the plaintiff's management of the school was, upon the whole, good or bad, must depend upon testimony of the manner in which she managed it.

We may suppose that a witness is called to testify to this point. His knowledge of the subject is limited to the transactions of a single day, and consequently his testimony would disclose a particular instance, or particular instances of good or bad management or government of the school. It would seem to be clear that such testimony is admissible. We may suppose another witness is called who has full knowledge of the manner in which the school was managed and governed. The general rule of evidence would require the witness to state the whole facts within his knowledge, material to the issue. If the witness should disclose the whole facts in relation to the management or government of the school, he must necessarily testify as to particular instances of good or bad management or government, for he could state only one thing at a time, and it could not be determined until his testimony was closed, which were particular instances of management or government, and which her general management and government of the school. It is evident that the question should be determined upon testimony and not upon the opinion of witnesses. If the defendants had no right to show particular instances of bad management and government of the school, then the plaintiff had no right to show particular instances of good manage-

ment and government, and under such rule no testimony was admissible upon the subject. From such rule it would follow that the question must be decided by the witness or witnesses and not by the jury, and the result, to a great extent, would depend upon the number of witnesses the party should produce. We are satisfied that the ruling of the county court, as to the other points to which exceptions are taken, was correct.

The judgment of the county court is reversed and the case is remanded.